Donahue, J.
Counsel, both in their briefs and oral arguments, have not confined themselves to the issues joined in the pleadings.
While there is an averment in the plaintiff’s petition that the defendant caused its premises immediately adjoining those of the plaintiff to be excavated to a depth of 18 or 20 feet below the curb grade of Freeman avenue, and for many years has maintained a cellar in this excavation the entire depth of plaintiff’s lot, and that the defendant operated pumps for the purpose of preventing the water from filling its cellar; yet there is no averment either that the excavation to a depth greater than 9 feet below the curb grade, or the refusal on the part of the defendant to permit its cellar to fill with water, caused the damages to plaintiff’s property. On the contrary, she specifically avers in her petition that the damage was caused to her property by reason of the negligence of the defendant in two particulars:
First: That the defendant negligently permitted its adjoining wall to break and crack in many places; that the gravel and earth from plaintiff’s lot was thereby caused to slip and slide through these cracks and breaks, to such an extent as to undermine the foundation of her building.
Second: That on the day preceding the injury to plaintiff’s property, the defendant installed in its cellar, immediately adjoining plaintiff’s premises on *215 the south, large siphon or other force pumps, and operated these pumps in such a careless, negligent manner, and with such force and power, as to cause the earth, sand and gravel on plaintiff’s lot to be thrown into the cellar of the defendant through and under the walls maintained by it, thereby undermining the building on plaintiff’s lot and removing the support of its foundation.
The defendant in its answer denies these averments of negligence.
It clearly appears from the evidence offered on behalf of the plaintiff that the waters that washed the sand, earth and gravel from under the foundation of her building, were part of the waters of a general flood in this and adjoining states in the latter part of March, 1913. This flood was so unprecedented in its extent and character, so disastrous and devastating in its nature, that it is an epoch in the history of the state. It is beyond dispute that it was “an act of God,” which human foresight could not have foreseen or reasonably anticipated, and against which human power could not defend. In this respect there is no controversy in this case either in the record or arguments and briefs of counsel.
In ’support of this first averment of negligence, the plaintiff offered the evidence of John George Broxterman, who was the only witness perhaps who had any knowledge of the facts. He testified that this wall adjoining plaintiff’s premises was constructed of solid stone masonry, 3 or 3£ feet in thickness, extending the entire depth of the excavation and below the cement floor in the driveway *216 céllar; that on Sunday, the day before the collapse of plaintiff’s building, water was coming through the crevices of this wall about 18 inches from the cellar floor, up to about 3 or 3¿ feet high, for a distance of 20 feet back from the curb line, and that “there was some little sand coming through on Sunday, very little, very slight, because the crevice was not large enough to let any sand through scarcely.”
While the interest of this witness was adverse to the interest of the plaintiff, he was the only witness having knowledge of these facts or that testified upon this subject. Plaintiff under the statute was permitted to cross-examine him to the same extent as if he had been called by the defendant.
This is the only evidence offered by the plaintiff tending to prove any defect in this wall. There is no evidence whatever in this record that this wall at all other times and under all ordinary conditions was not amply sufficient for the protection of plaintiff’s property. This defendant in the construction and maintenance of its wall was not required to anticipate such an extraordinary and unprecedented flood, and even had it done so, it could hardly have built a wall that would have withstood such a devastating force. If, however, it could be said that this evidence that the flood waters-of this extraordinary flood forced their way through the crevices in this wall, carrying “some little sand coming through on Sunday, very little, very slight, because the crevice was not large enough to let any sand through scarcely,” tended to prove that this wall was in such a defective condition that it *217 would not resist the waters of an ordinary flood, notwithstanding the fact that for many years it had met every requirement, not only of ordinary floods, but of the peculiar formation of the earth and soil in that locality; yet the further evidence of Broxterman clearly demonstrates that the condition of the wall was not even a contributing, much less a proximate, cause of the injury.
This witness further testified that early the following morning (Monday morning), about two or two and one-half hours before the collapse of. plaintiff’s building, he discovered that some time in the night season the cement floor in the driveway cellar had been forced upward, causing a break or crevice 4 or 5 inches wide, the entire width of the cellar, through which the water was coming in large volumes, carrying with it quantities of sand, gravel and earth, to such an extent that it had filled a 6-inch iron drainpipe leading from the driveway cellar to the tank in the subcellar, and it became necessary to break this drainpipe to permit' the water to flow through into the subcellar. From this uncontradicted evidence it appears that this flood water would necessarily, and perhaps much earlier, if this wall had been wholly impervious to water throughout all its parts, have found its way under the wall and upward through the cement floor in the driveway cellar. This was the real cause of the damage to plaintiff’s property regardless of the condition of the wall.
' It is not averred in the petition, or contended upon the part of the defendant in error, that the defendant was guilty of negligence in not placing *218 a floor in its cellar strong enough to withstand the force of this flood; nor would such contention be tenable, for, even if it were the duty of the defendant to place such a floor in its cellar as would resist ordinary flood conditions, it could not be . expected or required to anticipate a flood of this extraordinary character.
In the case of Miller v. The Baltimore & Ohio Southwestern Rd. Co., 78 Ohio St., 309, this court held: “In contemplation of law, an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence, is not actionable.” In the opinion in that case it is said, at page 325: “The rule is elementary, that the defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of, and in determining what is direct or proximate cause, the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.”
To the same effect is the doctrine announced in' the case of Daniels et al. v. Ballantine, 23 Ohio St., 532.
The plaintiff wholly failed to offer any evidence in support of the averments in her petition that the defendant operated large siphon or other force pumps in its cellar adjoining plaintiff’s property, in a negligent manner, and with such force and *219 power as to cause the earth, sand and gravel in the plaintiff’s lot to be drawn into the defendant’s cellar, thereby undermining the building on plaintiff’s lot and removing the support of the foundation of her building.
On the contrary, the evidence introduced by the plaintiff clearly establishes the facts that these pumps were not installed in the cellar adjoining her premises, but were installed in a pit or iron tank 6 feet deep and 7 or 8 feet in diameter, sunk in the floor of a subcellar 30 feet below the curb grade and directly south of the driveway cellar that adjoins her premises; that the water from the driveway cellar ran by force of gravitation into this tank in the subcellar; that the operation of the pumps exerted no force or power whatever by way of suction, or otherwise, that would in any way' increase or hasten the flow of water, earth, sand or gravel from plaintiff’s lot; and that the only effect of the operation of these pumps was to keep the water from flooding the defendant’s cellar to the level of the water on plaintiff’s premises. Therefore upon this averment of negligence the plaintiff must also fail. This disposes of the only issues joined in the pleadings.
Although it is not averred in the petition, it is now contended that this excavation to a depth greater than 9 feet below the curb grade of the street on which the defendant’s lot abuts caused the damage to plaintiff’s property, notwithstanding it is- positively averred in the petition that this damage was caused by . the negligence of the defendant in two particulars hereinbefore stated. If *220 this excavation were in fact the proximate cause of the damage to plaintiff’s property, then she is entitled to recover under the provisions of Section 3782, General Code, regardless of the question of negligence. The plaintiff offered no direct evidence tending to prove that this cellar of the defendant’s caused the damages. That would be of no importance, however, if, from all the facts and circumstances that the evidence offered by her tended to establish, the.natural inference might be drawn that the damages complained of were caused by the excavation on defendant’s property to a depth greater than 9 feet below the curb grade. (L. S. & M. S. Ry. Co. v. Andrews, Admr., 58 Ohio St., 426.) The evidence, however, conclusively establishes that the depth of this cellar did not cause this damage. The defendant was entitled to excavate to a depth of 9 feet below the curb grade of the street upon which its lot abuts. Certainly these flood waters would have found their way under an ordinary cellar wall to a depth of 9 feet much more readily than under a solid wall of stone masonry 3 or 3 feet thick, extending 18 or 20 feet into the earth, and the result would have been equally as disastrous to plaintiff’s property.
It is not contended that if this cellar under defendant’s property were but 9 feet below the curb grade, it would be required to place such a floor in that cellar as would resist the upward force of the waters of this extraordinary flood, yet certainly there would be far more danger of the water finding access through the floor of a cellar 9 feet deep than through the floor of a cellar 18 or 20 feet *221 deep. So that the fact that the water found access through the floor of defendant’s cellar, is no evidence that the damage was caused by reason of the excavation to a depth greater than 9 feet below the curb grade.
Evidence was introduced upon the trial of this case, without objection upon the part of the defendant, tending to prove that if the defendant’s cellar had been permitted to fill with water, it would have equaled or neutralized the hydrostatic pressure of the water on plaintiff’s premises and prevented the undermining of the foundation of plaintiff’s building.
The evidence clearly establishes the fact that this damage was caused by these flood waters forcing their way upward through the floor of defendant’s cellar. Beyond all question, this would not have occurred if the defendant had permitted its cellar to fill with water to the level of the water on plaintiff’s premises. If, in order to protect the plaintiff’s property, it was the duty of the defendant to permit its cellar to fill with water, regardless of the damage it might cause to property stored therein, then the plaintiff ought to have been permitted to amend her petition to conform to the proofs offered, and the cause should have been submitted to a jury under proper instructions.
The waters of this unprecedented flood were a common enemy. Each proprietor had a right to repel its invasion upon his own property as best he could, if in doing so he did not increase the volume or direct its force against his neighbor’s property, further' than its mere failure to find ac *222 cess to his property. The plaintiff made no effort whatever to prevent the invasion of these waters upon her premises. Had she even taken the precaution to plug the sewer drain, as the defendant did, the water might not have found access to her cellar; but the fact that she did nothing to protect her property from the ravages of this flood in no wise deprived the defendant of its right to do so.
If this driveway cellar had not exceeded 9 feet in depth, it would hardly be seriously contended that the defendant must suffer destruction of its property stored in its cellar in order to equalize or neutralize the hydrostatic pressure of the waters permitted to accumulate in the plaintiff’s cellar, without any vigilance on her part to prevent its access thereto.
The fact that the defendant had excavated to a greater depth than 9 feet below the curb grade did not deprive it of any right that it otherwise would have to protect its property from these flood waters. If such excavation caused the damage, defendant was liable unconditionally, regardless of what it did or did not do in its efforts to defend against these flood waters. If the excavation did not cause the damage, then it is not a factor in this case, unless the acts of the defendant were negligent in view ■ of and because of the depth of its cellar. There is no evidence in this record, however, tending to prove that anything done by the defendant that it would have had a right to do had its cellar been only 9 feet deep became negligence on its part because its cellar was 18 or 20 feet deep. On the contrary, the evidence offered by plaintiff clearly *223 establishes the facts that the proximate cause of the damage to her property was the flood waters of this extraordinary and unprecedented flood; that the condition of the defendant’s wall adjoining her property, and the depth of its cellar, were not even contributing causes to the injury; and that the defendant was wholly within its legal rights in its efforts to repel the invasion of its premises by these flood waters.
There is no conflict in the evidence, and the proper judgment to be entered involves only a construction of the law applicable to such facts. (Cornell v. Morrison, 87 Ohio St., 215.) Upon the undisputed facts the trial court properly directed a verdict for the defendant.
Judgment of the court of appeals is reversed, and that of the common pleas court affirmed.

Judgment reversed.

Nichols, C. J., Newman, Jones, Matthias and Johnson, JJ., concur.